GLOBE NEWSPAPER COMPANY & another[1] *vs.* POLICE
COMMISSIONER OF BOSTON & another.[2]

Suffolk. January 10, 1995. - April 5, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Public Records. Police*, Records. *Municipal Corporations*, Public record.
*Privacy. Grand Jury.*

Discussion of legal principles and standards applicable to a disputed re-
quest for disclosure of government agency records as public records
where the statutory exemption, G. L. c. 4, § 7, Twenty-sixth (*a*), the
privacy exemption, G. L. c. 4, § 7, Twenty-sixth (*c*), or the investiga-
tory exemption, G. L. c. 4, § 7, Twenty-sixth (*f*), might be applicable.
[857-859]

In an action brought by a newspaper publisher, seeking disclosure as pub-
lic records of materials compiled by the internal affairs department of a
police department relative to its inquiry into allegations of police mis-
conduct in the investigation of a notorious murder case, the judge cor-
rectly ruled that, with respect to certain citizen witness statements to
police already disclosed publicly, no privacy exemption was applicable
[859-860]; with respect to certain such materials not previously pub-
licly disclosed, redactions were appropriate [860-861]; with respect to
audio tapes and transcripts, given the extensive amount of prior disclos-
ure, no investigatory exemption was applicable [861-864]; however,
with respect to certain materials revealing undisclosed personal facts
relating to persons other than the witnesses, those persons' privacy in-
terests required the redaction of such information in the materials
[861].

In an action brought by a newspaper publisher, seeking disclosure as pub-
lic records of materials compiled by the internal affairs department of a
police department relative to its inquiry into allegations of police mis-
conduct in the investigation of a notorious murder case, the judge cor-
rectly ruled that, with respect to statements of certain identified police
officers to investigators, no privacy exemption or investigatory exemp-
tion was applicable, in light of the extent of previous publicity regard-
ing those interviews. [864-865]

---

[1]Sean P. Murphy.

[2]The district attorney for the Suffolk district, intervener.

In an action brought by a newspaper publisher, seeking disclosure as public records of materials compiled by the internal affairs department of a police department relative to its inquiry into allegations of police misconduct in the investigation of a notorious murder case, in the circumstances, the judge correctly ruled that, with respect to information stating or summarizing grand jury testimony, where the fact that a witness had testified before the grand jury was known and that person's testimony had been previously disclosed or summarized publicly, no interest in secrecy remained to be protected, and that material could be disclosed, with deletions of certain information not previously publicized. [865-866]

In an action brought by a newspaper publisher, seeking disclosure as public records of materials compiled by the internal affairs department of a police department relative to its inquiry into allegations of police misconduct in the investigation of a notorious murder case, in the circumstances, the judge incorrectly ruled that previously undisclosed homicide hotline records were subject to disclosure in part, where the investigatory exemption was applicable to protect the confidentiality of cooperative citizens [866-867]; with respect to the names of suspects identified by callers, whose identity had been disclosed by the publicity surrounding the investigation, no privacy or investigatory exemption was applicable [867]; however, with respect to the identity of and information about other "suspects" identified by callers and not previously disclosed, their privacy interests outweighed any public interest in disclosure [867-868].

This court stated that, in the future, in any action seeking disclosure as public records of materials compiled by a government agency, in which the disputed records are voluminous and must be personally reviewed, the judge may, in conjunction with an appropriate protective order, permit counsel for the custodian and the party to have access to the materials in order to particularize the claims and defenses raised. [868-869]

CIVIL ACTION commenced in the Superior Court Department on December 16, 1992.

The case was heard by *J. Harold Flannery*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Susan M. Prosnitz*, Special Assistant Corporation Counsel (*Carol A. Thompson*, Assistant Corporation Counsel with her) for Police Commissioner of Boston.

*Pamela L. Hunt,* Assistant Attorney General, for District Attorney for the Suffolk District.

*Jonathan M. Albano* for the plaintiffs.

*John M. Collins,* for Massachusetts Chiefs of Police Association, Inc., amicus curiae, submitted a brief.

*Carl Valvo & Paul J. McCarthy,* for Massachusetts Police Association, amicus curiae, submitted a brief.

GREANEY, J. The plaintiffs, Globe Newspaper Company and Sean P. Murphy, one of its reporters (whom we shall refer to collectively as Globe) brought this action for declaratory and injunctive relief in the Superior Court pursuant to the public records law, G. L. c. 66, § 10 (*b*) (1992 ed.), and G. L. c. 231A (1992 ed.), against the defendant the police commissioner of Boston (commissioner). The district attorney for the Suffolk district was permitted to intervene on the police commissioner's side of the dispute. (When the context suggests, we shall refer to the commissioner and the district attorney collectively as defendants.) The action sought to compel disclosure of materials compiled by the internal affairs division (IAD) of the Boston police department (department) in its inquiry into allegations of police misconduct during the investigation of the murder of Carol DiMaiti Stuart and the shooting of her husband, Charles Stuart. The case was tried before a Superior Court judge who, after conducting an in camera inspection of the materials, ordered the disclosure of most of the requested information, subject, in certain instances, to prescribed redactions. A stay of the judgment entered on the disclosure order was allowed by a single justice of the Appeals Court. The defendants appealed, and we allowed their joint application for direct appellate review. We agree with the judge's decision for the most part, but conclude that some of the information sought by the Globe is exempt from disclosure.

The background of the case is as follows. Following the October 23, 1989, murder of Carol DiMaiti Stuart (and the shooting of her husband, Charles Stuart), the Boston police department conducted a highly publicized investigation of the incident. During the course of the investigation, several

citizen witnesses claimed that they had been coerced by the police into providing false information incriminating one Willie Bennett as the perpetrator of the crimes. The United States Department of Justice subsequently investigated numerous allegations of misconduct by the Boston police, and, on July 10, 1991, the United States Attorney for the District of Massachusetts released the results of the Federal investigation to the public in the form of a twenty-page report and press release (report). Although the United States Attorney stated in the report that he chose not to prosecute any members of the Boston police department for Federal criminal civil rights violations, the report publicly alleged in detail specific instances of serious police misconduct.[3] The report also disclosed the identities of citizen witnesses in the Federal investigation and summarized information that the witnesses had provided to the police and to the Suffolk County grand jury.

As a result of the report, the IAD of the department conducted its own investigation into the allegations of police misconduct during the Stuart investigation. In addition to examining materials compiled during the criminal investigation, which included hotline tips, audio tapes, transcripts of witness interviews, and grand jury testimony, IAD investigators interviewed several citizen witnesses and police officers. At a press conference held in August, 1992, the department released the results of its internal investigation in a fifty-three page public document entitled, "The Stuart Investigation: A Response to the U.S. Attorney's Report" (response). In addressing at length each of the specific allegations contained in the report, the response summarized, in some detail, witness interviews conducted during both the IAD and

---

[3]The report concluded that prosecution under Federal law was not warranted because the evidence compiled during the Federal investigation did not show that the investigating Boston police officers knew, or should have known, that the version of events first told to them was false and that the investigating officers specifically agreed to violate certain individuals' civil rights by prosecuting them on the basis of evidence which was known, or should have been known, to be false.

criminal investigation. The response also summarized (also in some detail) IAD interviews of police officers and referred to the grand jury testimony of several citizen witnesses.

By letter dated September 15, 1992, the Globe requested that the commissioner release the materials compiled during the police department's IAD investigation. The Globe relied on G. L. c. 66, § 10 (*a*), which requires, upon request, disclosure of "any public record," as defined in G. L. c. 4, § 7, Twenty-sixth (1992 ed.). The commissioner denied the Globe's request, asserting that statutory exemptions protected the information from disclosure. The Globe then initiated the present action.

The judge held a trial at which he heard testimony from several witnesses.[4] The judge decided to conduct an in camera "line-by-line" examination of all the materials,[5] after which he filed a twenty-five page memorandum entitled "Rulings and Order" extensively analyzing the materials in light of the issues raised by the parties. The judge ruled that some materials, or parts thereof, were exempt from disclosure under either the statutory exemption, G. L. c. 4, § 7, Twenty-sixth (*a*),[6] or the privacy exemption, G. L. c. 4, § 7,

---

[4]The trial was held pursuant to Mass. R. Civ. P. 65 (b) (2), 365 Mass. 832 (1974), after the judge ordered the trial of the action on its merits to be expedited and consolidated with the hearing on the Globe's application for a preliminary injunction.

[5]The judge decided that an in camera inspection was needed, after he declined to accept as determinative the testimony of police witnesses which was general and conclusory in nature. The principal thrust of this testimony was that disclosure of any disputed materials would have a chilling effect on future efforts to achieve effective law enforcement or that other reasons existed to keep the information confidential.

[6]Subdivision (*a*) of G. L. c. 4, § 7, Twenty-sixth, excludes from the definition of "public records" any materials "specifically or by necessary implication exempted from disclosure by statute." Pursuant to this provision, the judge restricted public access to "criminal offender record information" (CORI), as that term is defined in G. L. c. 6, § 167 (1992 ed.), which provides, in relevant part: " 'Criminal offender record information' [includes] records and data in any communicable form compiled by a criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, sentencing, incarceration, rehabilita-

Twenty-sixth (c).[7] These rulings are not disputed on appeal. The judge also concluded that the remaining materials were not protected by either the privacy exemption or the investigatory exemption, G. L. c. 4, § 7, Twenty-sixth (f).[8] The judge indicated that the considerable amount of previous publicity given to much of the information in the report and the response had influenced his decision to order disclosure of materials that might otherwise be protected. We are concerned with the defendants' contentions that the disputed materials which the judge ordered disclosed are exempt from disclosure. We have organized the materials into five categories: transcripts and audio tapes of citizen witness statements, police officer statements and related materials, grand jury testimony, homicide hotline records, and other miscellaneous items. We shall discuss each category after first setting out general legal principles that apply to the dispute.

Under the public records law, there exists "a presumption that the record sought is public,"[9] G. L. c. 66, § 10 (c), and a government agency which refuses to comply with an otherwise proper request for disclosure has the burden of proving "with specificity" that the information requested is within one of nine statutory exemptions to disclosure. Moreover, the

---

tion, or release. Such information shall be restricted to that recorded as the result of the initiation of criminal proceedings or any consequent proceedings related thereto." CORI may not be disclosed to members of the general public. See G. L. c. 6, § 172 (1992 ed.).

[7]Materials protected from disclosure under the privacy exemption include "data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." The judge ruled that "previously undisclosed names of citizen witnesses . . . . [and] otherwise undisclosed addresses; references to incarceration, release dates, and probation; testimony before the grand jury; and information of a personal nature" fell within the scope of this exemption.

[8]The investigatory exemption protects from disclosure "investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest."

[9]There is no dispute that the materials requested fall within the broad definition of the term "public records" contained in G. L. c. 4, § 7, Twenty-sixth.

existence of some exempt information in a document will not "justify cloture as to all of it," *Reinstein* v. *Police Comm'r of Boston*, 378 Mass. 281, 290 (1979), because "the right to access extend[s] to any nonexempt 'segregable portion' of a public record." *Id.* at 287-288.

Application of the privacy exemption, see note 7, *supra*, requires a balancing between any claimed invasion of privacy and the interest of the public in disclosure. See *Reinstein* v. *Police Comm'r of Boston, supra* at 292; *Attorney Gen.* v. *Collector of Lynn*, 377 Mass. 151, 156 (1979); *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn*, 374 Mass. 812, 818 (1978). "Where the public interest in obtaining information substantially outweighs the seriousness of any invasion of privacy, the private interest in preventing disclosure must yield to the public interest." *Attorney Gen.* v. *Collector of Lynn, supra* at 156. In identifying the existence of privacy interests, we have suggested for consideration: whether disclosure would "result in personal embarrassment to an individual of normal sensibilities," *id.* at 157; whether the materials sought contain " 'intimate details' of a 'highly personal' nature," *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn, supra* at 818, quoting *Getman* v. *NLRB*, 450 F.2d 670, 675 (D.C. Cir. 1971); and whether "the same information is available from other sources," *Attorney Gen.* v. *Collector of Lynn, supra* at 157. Against these, and other case-specific relevant factors, a judge must weigh the public interest in disclosure. We have also recognized that "[t]he public has an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner." *Id.* at 158.

Application of the investigatory exemption, see note 8, *supra*, does not contemplate a balancing test. Rather, the inquiry is whether the materials requested are "investigatory materials necessarily compiled out of the public view," and, if so, whether the agency resisting disclosure has demonstrated that their release "would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." Apart from grand jury

testimony, which is in a separate category, the materials compiled here are "investigatory materials necessarily compiled out of the public view."[10] See *Reinstein* v. *Police Comm'r of Boston, supra* at 290-291. See also *Stern* v. *Federal Bureau of Investigation,* 737 F.2d 84, 89 (D.C. Cir. 1984); *Aspin* v. *Department of Defense,* 491 F.2d 24, 30 (D.C. Cir. 1973). The question under the investigatory exemption therefore becomes whether the disclosure ordered would be so prejudicial to effective law enforcement that it is in the public interest to maintain secrecy. In deciding that question, we keep in mind that the exemption aims at "the prevention of the disclosure of confidential investigative techniques, procedures, or sources of information, the encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation, and the creation of initiative that police officers might be completely candid in recording their observations, hypotheses and interim conclusions." *Bougas* v. *Chief of Police of Lexington,* 371 Mass. 59, 62 (1976). We also keep in mind that "[t]here is no blanket exemption provided for records kept by police departments" solely because they are involved in investigatory work, *id.* at 65, and that the potential prejudicial effect of disclosure on "effective law enforcement" is to be considered on a case-by-case basis. *Reinstein* v. *Police Comm'r of Boston, supra* at 290. We turn now to the materials in issue here.

*Citizen witness statements.* This category of materials includes transcripts and audio tapes of twelve citizen witness interviews. Nine of the interviews were conducted by IAD

[10]The IAD investigation did not constitute general monitoring by the police department of its employees. Courts have held under the somewhat analogous Federal Freedom of Information Act, 5 U.S.C. § 552 (b) (7) (1988), that routine agency monitoring of its own employees will not usually fall within the scope of an investigatory exemption. See, e.g., *Cotton* v. *Adams,* 798 F. Supp. 22, 25 (D.D.C. 1992); *Greenpeace, U.S.A., Inc.* v. *Environmental Protection Agency,* 735 F. Supp. 13, 15 (D.D.C. 1990). The IAD investigation in this case was far from routine. It was conducted to assess the validity of assertions in the report of possible serious wrongdoing on the part of the Boston police. The investigation also included materials from the original criminal investigation which clearly were investigatory in nature.

investigators and the remaining three were conducted during the criminal investigation. The report identified two of the three citizen witnesses interviewed during the criminal investigation. The response summarized eight of the nine IAD citizen witness interviews.

(i) *Privacy exemption.* With respect to materials which had been previously revealed by the report and the response, the judge ordered full disclosure. The judge concluded that the citizen witnesses no longer had an overriding expectation of privacy in the information because "it is impossible to erase from public knowledge information already released." The judge acted properly in ordering disclosure of these materials. Similarly, the judge's decision to order disclosure of previously released information provided by citizen witnesses concerning other people was not error.

While we agree with the defendants that otherwise private information does not necessarily lose that character by having been at one time placed in the public domain, see *Halloran* v. *Veterans Admin.*, 874 F.2d 315, 322 (5th Cir. 1989), the considerable amount of prior disclosure provided in the report and response seriously compromised any privacy interests that might be affected by renewed publicity. See *Attorney Gen.* v. *Collector of Lynn, supra* at 157 ("the seriousness of any invasion of privacy resulting from disclosure of the records . . . is reduced since substantially the same information is available from other sources"). See also Restatement (Second) of Torts § 652D, at 385 (1977) ("there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record"). The public interest in knowing whether police investigation of the Stuart case, and the ensuing IAD investigation, were conducted in a thorough and honest manner outweighs any invasion of privacy resulting from the full disclosure ordered by the judge.

With respect to undisclosed materials relating to the citizen witnesses, the judge applied the balancing test, and ordered limited disclosure with redaction of previously undisclosed names and addresses of citizen witnesses, references to incarceration, release dates, data concerning probation, refer-

ences to grand jury testimony, and other information of a personal nature. The judge acted properly as to this information.

We take a different view, however, of the judge's decision to order disclosure of information provided by citizen witnesses which revealed previously undisclosed personal facts relating to other persons, such as an individual's purported involvement with drugs. In this context, the judge reasoned that "people mentioned in the course of an interview have little expectation of privacy regarding statements made by others about them." We believe that these persons' privacy interests are more substantial than the judge may have recognized. The privacy exemption does not distinguish or rank different individuals' privacy interests. Rather, it protects from public scrutiny information that would lead to an unwarranted invasion of privacy of any person mentioned in the requested materials. See *Halloran* v. *Veterans Admin., supra* at 320-321. The revelation by a citizen witness that another person is a drug addict, for example, is precisely the type of "intimate" and "highly personal" information that the privacy exemption would protect. See *Rural Hous. Alliance* v. *United States Dep't of Agric.*, 498 F.2d 73, 77 (D.C. Cir. 1974) (comparable Federal exemption protects information concerning "marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights [and] reputation"). Furthermore, disclosure of these facts does not enhance to any significant degree the public insight into the propriety of police conduct during the criminal investigation. We conclude that this information also should be redacted prior to release of the citizen witness statements.

(ii) *Investigatory exemption.* The defendants also contend that all the transcripts and audio tapes of citizen witness interviews are protected from disclosure under the investigatory exemption.[11] The defendants argue that releasing these

---

[11]The Globe claims that the department, in releasing its response, waived its right to invoke the investigatory exemption with respect to the

materials could have a "deleterious" impact on criminal investigations because citizens who are considering coming forward with information in future cases may be deterred by the risk that the public will have access to any statements they make. The defendants also maintain that disclosing the interview transcripts to the public would compromise the integrity of secret grand jury proceedings. This last argument is premised on the fact that a police officer or prosecutor must evaluate this information in order to determine who should appear before the grand jury.

"[T]he encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation" is a principal objective of the investigatory exemption. *Bougas* v. *Chief of Police of Lexington, supra* at 62. Furthermore, the fact that an investigation has concluded, as in this case, does not necessarily destroy the exemption. "[I]f an agency's investigatory files were obtainable without limitation after the investigation was concluded, future law enforcement efforts by the agency could be seriously hindered. Even materials relating to an inactive investigation

---

response's underlying documents. The Globe cites several Federal decisions in support of the proposition that a government agency cannot disclose information and subsequently claim an exemption for materials containing. substantially the same information. See *Cooper* v. *Department of the Navy*, 594 F.2d 484, 485 (5th Cir.), cert. denied, 444 U.S. 926 (1979); *State ex rel. Olson* v. *Andrus*, 581 F.2d 177, 182 (8th Cir. 1978); *Shell Oil Co.* v. *Internal Revenue Serv.*, 772 F. Supp. 202, 211 (D. Del. 1991); *Washington Post Co.* v. *United States Dep't of the Air Force*, 617 F. Supp. 602, 605 (D.D.C. 1985); *Fiumara* v. *Higgins*, 572 F. Supp. 1093, 1100 (D.N.H. 1983); *Cooper* v. *Internal Revenue Serv.*, 450 F. Supp. 752, 755 (D.D.C. 1977).

Application of a waiver doctrine in this case, however, is inappropriate for two reasons. First, we have held that inclusion in public records of information derived from exempt materials, standing alone, does not make the subsidiary records also public records. "[A] record containing information which later becomes part of a public record is not a public record merely by virtue of such relation but must itself satisfy the statutory definition in all respects." *Dunn* v. *Assessors of Sterling*, 361 Mass. 692, 694 (1972), and cases cited. Second, there is no indication that the department, either expressly or through its conduct, wished to make public the information that it has not made public, and thus forgo the protection of the exemption. See *Irons* v. *Federal Bureau of Investigation*, 880 F.2d 1446, 1454 (1st Cir. 1989).

may require confidentiality in order to convince citizens that they may safely confide in law enforcement officials." *Id.* at 63.

We are not persuaded, however, that the judge erred in ordering the disclosure in the face of the defendants' objections.[12] Although the response, which summarized several of the citizen interviews conducted by IAD investigators, did not constitute a waiver of the claim that the transcripts and audio tapes of those interviews were covered by the investigatory exemption, that prior publicity is relevant to the analysis under the exemption. Considering the extensive amount of prior disclosure, the judge could properly conclude that the incremental effect of revealing the citizen witness statements would not unduly restrain citizen participation in future criminal investigations. Indeed, in a case like this, which has generated considerable negative publicity, such disclosure may help to restore public confidence in a police department which has been highly criticized for its handling of a sensitive case.

We also disagree that releasing the citizen witness statements made to police might compromise the integrity of future grand jury proceedings. Certainly, circumstances may exist where the confidentiality of a grand jury might be jeopardized by the disclosure of information provided to police outside of the grand jury by citizen witnesses. See, e.g., *WBZ-TV4* v. *District Attorney for the Suffolk Dist.*, 408 Mass. 595, 604 (1990) (disclosure of tape-recorded witness statement inappropriate in context of ongoing criminal investigation). Considering the attenuated connection of this material to actual grand jury proceedings, we do not see any danger to the grand jury process by the disclosure ordered here.

---

[12]We reject the defendants' contention that the judge "completely disregarded" their claim that the citizen witness statements were exempt from public disclosure as investigatory materials. As the judge stated, it was only "after conducting a line-by-line inspection of the materials, [that] the court found no document, or portion thereof, that fell within the investigatory exemption."

2. *Police officers' statements and related. materials.* These materials comprise statements by police officers to IAD investigators, reports, and other materials compiled by the police. The judge ordered disclosure with CORI and previously undisclosed personal information redacted.

(i) *Privacy exemption.* The judge acted properly by declining to redact previously released personal information appearing in the officers' statements. The fact that, for example, an officer identified a person whose apartment had been searched pursuant to a warrant already had been made public by the response. There is no sufficient reason to invoke the protections provided by the privacy exemption to shield this information. Nor is there a sufficient basis under the privacy exemption to withhold the identities of the police officers interviewed by IAD investigators. Although the statements might tend to portray some officers in a "garish color," *Reinstein* v. *Police Comm'r of Boston, supra* at 293, it cannot be persuasively maintained, in light of the extent of previous publicity given to the IAD interviews, that officers' identities, and their involvement in the criminal investigation, can or should remain private.

(ii) *Investigatory exemption.* The judge also properly decided that nondisclosure or additional redaction of these materials was unwarranted under the investigatory exemption. The summaries of IAD interviews with police officers contained in the response have substantially diminished any harmful impact that disclosure of the statements may have. It is not likely that the effect of releasing the officers' statements would have a chilling effect on potential witnesses and thus "so prejudice the possibility of effective law enforcement." G. L. c. 4, § 7, Twenty-sixth (*f*). Similarly, in light of the prior publicity, release of police reports compiled during the IAD and criminal investigations does not seriously threaten the likelihood that police officers will be "completely candid in recording their observations, hypotheses and interim conclusions." *Bougas* v. *Chief of Police of Lexington,*

*supra* at 62.[13] Moreover, unlike most IAD investigations, this one was undertaken specifically to respond to the report, and the likelihood of publication was surely apparent to the police officers who made statements to IAD investigators.

3. *Grand jury testimony.* The response indicates that several witnesses interviewed by IAD investigators repeated their information in testimony before Suffolk County and Federal grand juries. The report also contains summaries of grand jury testimony. In those instances where the fact that a witness had testified before the grand jury was known, and that person's testimony had been previously summarized or disclosed, the judge ordered disclosure of that person's grand jury testimony with deletions of any reference to certain undisclosed information. Because the contents of the witnesses' testimony before the grand jury no longer remain secret as a result of the publicity given to them in the report and response, we conclude that the judge acted properly in ordering this disclosure.

"The requirement that grand jury proceedings remain secret is deeply rooted in the common law of the Commonwealth." *WBZ-TV4* v. *District Attorney for the Suffolk Dist., supra* at 599. We have recognized that several interests are served by maintaining strict confidentiality, "such as protection of the grand jury from outside influence, including influence by the news media; protection of individuals from notoriety and disgrace; encouragement of free disclosure of information to the grand jury; protection of witnesses from intimidation; and enhancement of free grand jury delibera-

---

[13]Several courts have noted, with some persuasiveness, that the possibility of limited disclosure of investigatory materials might promote candor. "A police officer who knows that no one from outside the law enforcement community will scrutinize his statements or his investigatory work may not feel the same level of pressure to be honest and accurate as would his counterpart in a system where . . . [a] person from the outside already has substantial information about the incident under investigation and has a strong motive to challenge the accuracy of the officer's memory or the reliability of his conclusions." *Kelly* v. *San Jose*, 114 F.R.D. 653, 665 (N.D.Cal. 1987). See *Wong* v. *City of New York*, 123 F.R.D. 481, 483 (S.D.N.Y. 1989); *King* v. *Conde*, 121 F.R.D. 180, 193 (E.D.N.Y. 1988).

tions." *Matter of a John Doe Grand Jury Investigation*, 415 Mass. 727, 729 (1993). "There must come a time, however, when information is sufficiently widely known that it has lost its character as [protected grand jury] material. The purpose in [protecting grand jury material] is to preserve secrecy. Information widely known is not secret." *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994). This exception is applicable to the information ordered by the judge to be disclosed.

We stress that we do not conclude that whenever there is public disclosure of some information before a grand jury, maintenance of grand jury secrecy is no longer necessary. We conclude only that, because the report and the response identified several grand jury witnesses and summarized, and in some instances quoted, their testimony, as far as to the disclosure ordered here, there is no real remaining secrecy to protect. Accordingly, the limited amount of disclosure is justified.

4. *Homicide hotline records.* This category of materials consists of records of telephone calls to the police homicide hotline from October 24, to November 8, 1989. After balancing the public interest with the callers' privacy interests, the judge concluded that disclosure of the callers' names was justified because it would assist the public in its "full and fair assessment of the IAD investigation." We conclude that this information is protected under the investigatory exemption, and, thus, we need not explore the applicability of the privacy exemption.

The callers' identities, unlike those of the citizen and police officer witnesses, had not been previously disclosed. Consequently, the interest in keeping this information confidential — namely, fostering an atmosphere where citizens can feel free to cooperate with police officers — has not diminished. There is some similarity between the calls to the homicide hotline that occurred here and the citizen letters in the *Bougas* case that were held exempt from disclosure. *Bougas* v. *Chief of Police of Lexington, supra* at 63. We do not agree with the Globe that the problem is solved by suggesting that future callers, wary of disclosure of personal in-

formation, can be given the option of supplying information anonymously. As the defendants note, we think persuasively, anonymous tips are inherently less reliable than information provided by a named individual. This information falls within the investigatory exemption.

The information provided by hotline callers also included names of suspects, observations of witnesses, and reports of crimes similar in time or place to the Stuart crimes. In addition, handwritten notes on accompanying materials indicate the steps taken by the police following particular calls. The judge ordered disclosure with redaction of CORI information and, under the privacy exemption, redaction of all other references to a suspect's previous arrests, social security number, or release date from prison.

The judge also ordered disclosure of the names of suspects identified by the callers, reasoning that "potential suspects do not have an expectation of privacy as to the statements of others." To the extent that the report and the response have already identified some of these suspects, this information is no longer private, and thus not entitled to protection under either exemption. However, we consider overbroad the judge's characterization of the privacy interests of other "suspects" whose identities remain concealed from public view. "There can be no clearer example of an unwarranted invasion of privacy than to release to the public that another individual was the subject of [a criminal] investigation." *Senate of P.R.* v. *United States Dep't of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987), quoting *Baez* v. *United States Dep't of Justice*, 647 F.2d 1328, 1338 (D.C. Cir. 1980). We are not persuaded that the public attention that the investigation into the Stuart murder has attracted necessarily tips the scales in favor of disclosure. Indeed, this fact potentially augments the intrusion on the privacy of those persons identified by the hotline callers. See *Fund for Constitutional Gov't* v. *National Archives & Records Serv.*, 656 F.2d 856, 865 (D.C. Cir. 1981) (public interest properly factors into both sides of the privacy exemption balance). This informa-

tion consequently falls within the scope of the privacy exemption and should not be disclosed.

5. *Miscellaneous items.* Remaining materials include certain correspondence, untranscribed audio tapes of calls placed to the police department, other miscellaneous information, and investigator materials compiled during preparation of a draft of the response. The defendants have not specifically addressed any of these items, and thus have not demonstrated that the judge's decision ordering disclosure was wrong. See *Bougas* v. *Chief of Police of Lexington, supra* at 65-66.

We make a few final comments. The parties have vigorously disputed the issues. On one hand, the Globe feels strongly that the right of the public to engage in an independent assessment of the validity of the investigation of charges of serious police misconduct is paramount. On the other hand, the defendants are deeply concerned that privacy and investigatory interests must be protected if there is to be effective law enforcement in the future. An IAD investigation of this magnitude is rare. The report, and the point-by-point reply in the response, are also unusual. The Stuart case is one of a kind and received extensive media coverage. We doubt that such a situation will recur and see as unwarranted the concern that important privacy and investigatory interests might be compromised in the future as a result of the resolution of this action.

The materials examined by the judge are voluminous, and he spent considerable time in checking them. The judge noted that "[a]fter conducting a meticulous review of the materials, it is clear that it is not practical to impose such a time-consuming and resource-intensive responsibility upon the court." This observation is apt. In the future, a judge faced with an expansive public records request, who decides that the disputed materials should be personally reviewed, may permit counsel for the custodian and the party seeking production access to the materials subject to an appropriate protective order. The parties could then particularize their arguments to the judge, citing specific materials, or portions

of materials, that are exempt or subject to disclosure. This would relieve the judge from a tedious examination of materials against generalized claims that exemptions are applicable.

We think it appropriate to have a new judgment entered to reflect the revisions made by this opinion in the disclosure ordered by the judge. The judgment is vacated. A new judgment is to be entered, consistent with this opinion, declaring the rights of the parties and the disclosure to which the Globe is entitled.

*So ordered.*