## Peter Antell *vs.* Attorney General.

No. 98-P-2326.

Suffolk. December 12, 2000. - August 9, 2001.

Present: Armstrong, C.J., Kaplan, & Greenberg, JJ.

*Public Records. Attorney at Law,* Work product. *Statute,* Construction.

Certain "investigatory" documents created by two assistant attorneys general
   and a State police investigator during a criminal inquiry into the conduct
   of a police chief were not work product protected from disclosure under
   the public records statute, G. L. c. 66, § 10, where there was no basis to
   invoke the privacy exemption, G. L. c. 4, § 7, Twenty-sixty (*c*), to shield
   the documents [247-248]; and where, given the fact the investigation had
   been resolved, the information gleaned from any interview of any witness,
   if disclosed, would not have had a chilling effect on witnesses' testimony
   or jeopardized any related proceedings, provided that redaction was used
   to preserve the anonymity of voluntary witnesses [248-249]; furthermore,
   it would be appropriate on remand for the judge to consider what, if any,
   information constituted criminal offender record information, and thereby,
   was protected from release by G. L. c. 6, § 172, and to redact such
   information [249].

Civil action commenced in the Superior Court Department on
July 1, 1997.

The case was heard by *Margaret R. Hinkle*, J., and entry of
final judgment was ordered by *John C. Cratsley*, J.

*Peter Antell (Robert Feigin* with him) pro se.

*Jane L. Willoughby*, Assistant Attorney General, for Attorney
General.

Greenberg, J. When, as here, a governmental entity subject to
the public records statute, G. L. c. 66, § 10, reviews a request
for documents and other records in its possession, it may not
withhold disclosure unless a specific statutory exemption
applies. See *General Elec. Co.* v. *Department of Envtl. Protec-
tion*, 429 Mass. 798, 805-806 (1999).

In the instant case, the Attorney General seeks to shield

certain materials concerning a 1991 criminal inquiry into the conduct of Michael Cronin, who serves as police chief of the town of Amesbury. Although the Attorney General's investigation did not result in the filing of criminal charges, it did spawn Cronin's subsequently filed civil action. He sued several Amesbury police officers, the town, and past and present town officials for their roles in triggering the investigation. Pursuant to the public records statute, Cronin's attorney (the plaintiff in this action) requested the Attorney General to disclose the investigation file.[1] The Attorney General withheld most of the requested material on the basis of an implied exemption for materials covered by, among other protections, the work product doctrine. See Mass.R.Civ.P. 26(b)(3), 365 Mass. 772 (1974). When the Attorney General responded with a limited set of documents, the plaintiff chose to lodge an appeal to the supervisor of public records (supervisor).[2] See G. L. c. 66, § 10(*b*); 950 Code Mass. Regs. § 32.08(2) (1993). Over two years later, on June 2, 1997, the supervisor issued an administrative order requiring the Attorney General to produce all of the documents that the plaintiff had requested, subject to certain redactions. Thereafter, the Attorney General disputed the propriety of the supervisor's order and refused to disclose materials that the supervisor had determined were nonexempt public records.[3]

On July 1, 1997, the plaintiff brought the instant action in the

[1]The underlying Superior Court action in which Cronin sued the town and several fellow officers has been settled; therefore, the plaintiff's need for discovery is moot. We do not, however, consider the ultimate intentions of the person making the request. See *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 64 (1976). In *Bougas*, the Supreme Judicial Court noted, "[i]t appears that the [public records] statute does not provide a 'standing' requirement but extends the right to examine public records to 'any person' whether intimately involved with the subject matter of the records he seeks or merely motivated by idle curiosity." *Ibid.* See also *Cunningham* v. *Health Officer of Chelsea*, 7 Mass. App. Ct. 861, 862 (statute requires no standing and provides no basis for discriminating among categories of persons seeking access to information pertaining to public records).

[2]Under the statute, appeals may also be brought directly to the Superior Court or the Supreme Judicial Court. See G. L. c. 66, § 10(*b*).

[3]The supervisor subsequently filed a complaint for declaratory relief challenging the Attorney General's action, and represented that since 1995, the Attorney General has declined to comply with at least six disclosure orders. The Attorney General declined a request that the Attorney General appoint a Special Assistant Attorney General to represent the supervisor's interests. The

Superior Court to compel access to the Attorney General's records, pursuant to G. L. c. 66, § 10(*b*), and G. L. c. 231A. After procedural meanderings, the case was heard by a Superior Court judge, who, after conducting an in-camera inspection of the documents, ordered disclosure of some records subject to certain minor redactions.[4] The court also ruled that three documents (written memoranda and notes that detail specific instances of alleged police misconduct) created by two assistant attorneys general and a State police investigator were protected work product.[5]

The plaintiff appealed. While the appeal was pending, the Supreme Judicial Court decided *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. at 798, holding that materials privileged as work product under Mass.R.Civ.P. 26(b)(3) are not protected from disclosure under the public records statute unless those materials fall within the scope of an express statutory exemption. See *id.*, at 801-806. As a result, on July 13, 1999, we permitted the parties to address issues raised by that case.

1. *The factual background.* In February, 1991, a number of Amesbury police officers registered complaints with the town manager, and later with the board of selectmen, alleging on-the-job misconduct of Sergeant David J. Connor, and cited several instances of Cronin's unwillingness to impose effective disciplinary measures to curb Connor's behavior. At the direction of the town selectman, the town manager sent a letter to the Attorney General's office requesting a review of the allegations against Connor and Cronin. Two assistant attorneys general and a State police investigator worked on the referral for some time and reduced their findings to several memoranda. As we

supervisor's motion to intervene in this action was also denied. In light of our disposition of the case in favor of the plaintiff, we need not reach the apparent conflict between the Attorney General and the supervisor.

[4]Contrary to the plaintiff's assertion, these redactions were proper, not because the material was irrelevant (despite that language having been used by the judge), but rather because it concerned an investigation entirely separate from the one at issue here. Thus, as the judge recognized in the "document index" appended to the final judgment, the plaintiff had never requested the information contained within those paragraphs.

[5]An additional document was deemed protected by G. L. c. 4, § 7, Twenty-sixth (*c*). This ruling is not challenged on appeal.

have stated, the reports contained notes of interviews of both police and citizen witnesses who gave information concerning the allegations against Cronin and Connor. In the end, the assistant attorneys general found no evidence of criminal wrongdoing and suggested the selectmen handle the matter administratively.

2. *Analysis.* As we have stated, the basis for the judge's conclusion that the contested materials are privileged as work product pursuant to Mass.R.Civ.P. 26(b)(3), 365 Mass. 772 (1974), was rejected in *General Elec. Co.* v. *Department of Envtl. Protection, supra.* We thus consider whether the three documents excluded as work product are protected by an express statutory exemption.

The Attorney General, citing *Bougas* v. *Chief of Police of Lexington,* 371 Mass. 59, 62-63 (1976), argues that the three documents in question are "investigatory," and as such, fall under exemption (*f*) of G. L. c. 4, § 7, Twenty-sixth. If not covered by that provision of the statute, the Attorney General argues that exemptions (*a*) or (*c*) apply to at least two of the documents. These exemptions protect from disclosure items that require protection under other statutes, see G. L. c. 4, § 7, Twenty-sixth (*a*),[6] or that contain information, "the disclosure of which may constitute an unwarranted invasion of personal privacy," see G. L. c. 4, § 7, Twenty-sixth (*c*).

In this case, the Attorney General no longer contemplates any criminal charges against Cronin. The supervisor found, and we agree, that the public interest in disclosing allegations of official misconduct at the conclusion of an investigation generally outweighs the privacy interests of participants in a cold investigation. See *Globe Newspaper Co.* v. *Police Commr. of Boston,* 419 Mass. 852, 858 (1995) (requiring a balancing test of the claimed invasion of privacy against the public interest in disclosure). See also *Attorney General* v. *Collector of Lynn,* 377 Mass. 151, 158 (1979) ("The public has an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner"); *New Bedford Standard Times Publishing Co.* v. *Clerk of the Third Dist. Ct. of Bristol,* 377

---

[6]The relevant statute here is G. L. c. 6, § 167, pertaining to criminal offender record information (CORI).

Mass. 404, 417 (1979) (Abrams, J., concurring) ("[g]reater access to information about the actions of public officers and institutions is increasingly recognized as an essential ingredient of public confidence in government"). Consequently, there is no basis to invoke the privacy exemption, c. 4, § 7, Twenty-sixth (c), to shield the documents.

Next, we consider whether the investigatory materials exemption, c. 4, § 7, Twenty-sixth (f), should protect any of the requested reports. This exemption protects information when disclosure "would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." G. L. c. 4, § 7, Twenty-sixth (f). There exists no blanket exemption for police records or investigation materials. See *Reinstein* v. *Police Commr. of Boston*, 378 Mass. 281, 289-290 (1979). A case-by-case review is required to determine whether the investigatory exemption applies. See *ibid.* As we have stated, the Cronin investigation has been resolved. Thus, we conclude that, subject to redaction, information gleaned from an interview of any witness, if disclosed, would not have a chilling effect on witnesses' testimony or jeopardize any related proceedings.

Redactions may be appropriate where they serve to preserve the anonymity of voluntary witnesses. See *Reinstein*, 378 Mass. at 290 n.18; *Globe Newspaper Co.* v. *Police Commr. of Boston*, 419 Mass. at 862-863 (explaining that the exemption for investigative materials may outlive the investigation). As we have observed, the Cronin investigation involved witnesses who were members of the Amesbury police department, some of whom may continue to be supervised by him. Disclosure of their identities may expose them to unjustified criticism or animus by their supervisors or colleagues and could lead to further discord within the department. See *Globe Newspaper Co.* v. *Police Commr. of Boston*, 419 Mass. at 862 (finding that the encouragement of individuals to come forward by affording confidentiality to their communications "is a principal objective of the investigatory exemption"). While some material may not immediately identify the witness, "[t]he inquiry as to what constitutes identifying information regarding an individual . . . must be considered not only from the viewpoint of the public,

but also from the vantage of those who are familiar with the individual and his career." *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 438 (1983) (exempting, under § 7, Twenty-sixth (*c*), materials that might indirectly identify an individual). As many of the witnesses' statements appear to have arisen from internal conflicts within the Amesbury police department, the materials should be redacted so as to protect the individual informants' identities.

Finally, we address the Attorney General's invocation of an additional exemption, G. L. c. 4, § 7, Twenty-sixth (*a*), which allows a custodian to withhold information if some other statute so requires. Inasmuch as this matter is to be remanded to the Superior Court for consideration of appropriate redactions in accordance with the preceding discussion, it is appropriate also that the court consider what, if any, information constitutes criminal offender record information (CORI), and is thereby protected from release by G. L. c. 6, § 172. Cf. *Globe Newspaper Co.* v. *Police Commr. of Boston*, 419 Mass. at 856-857.

The judgment is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion. Specifically, the Superior Court, after making necessary redactions sufficient to protect informants' and witnesses' identities, including the redaction of information the disclosure of which may violate c. 6, § 172, shall order the Attorney General to release to Cronin's attorney the remainder of his file. See *Globe Newspaper Co.*, 419 Mass. at 856-857 n.6.

*So ordered.*