Fremont-Smith, Thayer, J.
Oscar Pintado was at work as a carpenter in the construction of a building owned by AvalonBay Communities, Inc. (“Avalon-Bay”), when, on March 8, 2007 he fell down an elevator shaft and died as a result. Pintado’s estate alleges that National Carpentry Contractors, Inc.’s (“NCC”) and AvalonBay’s negligence resulted in Pintado’s fall and death. AvalonBay had contracted with NCC for this work, and NCC had, in turn, subcontracted the carpentry work to Caballero Construction, Inc. (“Caballero”) and supplied Pintado as a temporary worker to Caballero. The issue arises whether Pintado’s work was performed while he was an employee of NCC or as an independent contractor. Both AvalonBay and NCC were “named insureds” under an insurance policy issued by United National Insurance Company (“National”) which excluded coverage for bodily injury or death suffered by any independent contractor or any employee of an independent contractor. AvalonBay seeks to avoid the exclusion by establishing that Pin-tado was actually an employee of NCC, rather than an independent contractor, as he had been classified by NCC.[1]
On February 23,2009, the Massachusetts Attorney General’s office (“A.G.”), after an investigation, fined NCC $15,000 for intentional misclassification of particular employees whom NCC had classified as independent contractors rather than as employees so as to avoid paying them the wages to which they were entitled. Witness statements were also taken by the A.G. of NCC employees who were found to have been misclassified as independent contractors, but the names of these witnesses were redacted from the subpoenaed documents produced by the A.G. to AvalonBay.
Not surprisingly, the insured, AvalonBay, now seeks the unredacted records in order to glean the identities of individuals who could testify that NCC frequently misclassified persons such as Pintado as independent contractors in order to avoid wages. In denying production of the unredacted records, the A.G. alleges that the records, “insofar as they relate to a specifically named individual,” are withheld because “disclosure may constitute an unwarranted invasion of personal privacy pursuant to G.L.c. 4, §7(26)(c).”[2]
G.L.c. 66, § 10(a) requires, upon request, disclosure of any “public record,” as that term is definedin c. 4, §7(26). Pursuant to c. 66 §10(c), “there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies.” G.L.c. 66, § 10; In re Subpoena Duces Tecum, 445 Mass. 685, 688 (2006).
G.L.c. 4, §7 provides the definition of public record. The statute defines the term broadly to include “documentary materials or data . . . made or received by an officer of employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth.” G.L.c. 4, §7. There are eighteen exemptions to the public records law and for this case, the relevant exemptions are c. 4, §7(26)(c) (the privacy exemption), and c. 4, §7(26)(f) (the investigative exemption).
The “privacy exemption” exempts data relating to a specifically named individual the disclosure of which may constitute an unwarranted invasion of privacy. G.L.c. 4, §7(26)(c). Information is considered private when it constitutes “intimate details of a highly personal nature.” Georgiou v. Commissioner of the Dep’t of Indus. Accidents, 67 Mass.App.Ct. 428, 433 (2006). Massachusetts courts have issued a number of opinions regarding the application of this exemption. “Application of the privacy exemption requires a balancing between any claimed invasion of privacy and the interest of the public in disclosure.” Globe Newspaper *256 Co. v. Police Comm’r of Boston, 419 Mass. 852, 858 (1995). Generally, names and addresses of adults are not considered to be intimate details of a highly personal nature. Cape Cod Times v. Sheriff of Barnstable County, 443 Mass. 587, 595 (2005), but “the expectations of the data subject are relevant in determining whether disclosure might be an invasion of privacy,” and thus such information “might be protected against disclosure as an unwarranted invasion of privacy in one context and not another.” The balancing of a privacy interest against the public interest in disclosure must be done on a case-by-case basis. Torres v. Attorney Gen., 391 Mass. 1, 9 (1984); Georgiou, 67 Mass.App.Ct. at 433.
The “investigative exemption” exempts investigatory materials necessarily compiled out of the public view by law enforcement or other investigatoiy officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest. G.L.c. 4, §7(26)(f). Redactions maybe appropriate where they serve to preserve the anonymity of voluntary witnesses. Antell v. Attorney Gen., 52 Mass.App.Ct. 244, 248 (2001) (citing Reinstein v. Police Comm’r of Boston, 378 Mass. 281, 290 n.18 (action to compel release of police records from an investigation into inappropriate discharge of weapons by police officers); Globe Newspaper Co., 419 Mass. at 862-63 (indicating that the exemption for investigative materials may outlive the investigation). Whether withholding records under the investigatory exemption is proper is a case-by-case determination, and the custodian of the records has the burden of showing that disclosure would so prejudice effective law enforcement that disclosure would not be in the public interest. Refuse v. Stryker, 61 Mass.App.Ct. 595, review denied, 442 Mass. 1112 (2004); Antell, 52 Mass.App.Ct. at 248. See also, Georgiou, 67 Mass.App.Ct. at 428 (the statute requires “a balancing between the seriousness of any invasion of privacy that may exist and the public’s right to know. It calls for a balancing of interests, rather than for an objective determination of fact”).
Whether disclosure is proper in this case will thus turn on the proper balance of the interest in protecting the privacy of the workers who participated in the A.G.’s investigation against the public interest in disclosing the redacted information. Globe Newspaper Co., 419 Mass. at 858.
To support releasing the complete records, Avalon-Bay argues that the A.G. has not met the specificity requirement of the public records law. G.L.c. 66, §10 (“the burden shall be upon the custodian to prove with specificity the exemption which applies”). The A.G., on the other hand, argues that both the privacy and investigatoiy exemptions apply. G.L.c. 4, §7(26)(a), (c). It urges that the disclosure of the names and contact information of the investigation witnesses will have “a chilling effect on citizens’ -willingness to come forward with their complaints, which is what the investigative exemption is designed to prevent, particularly where, as here, there is a vulnerable employee population (low-wage and/or immigrant workers) who are often reluctant to come forward given their particularly precarious socioeconomic position.”
In a recent decision, Larabee v. Attorney Gen., NOCV2007-01016-D (Mass.Super.Ct), Judge Brady stressed the importance of employees’ reliance on promises of confidentiality in similar circumstances as those here, and stated, at 3: “public policy discourages an outcome that would cause individuals to jeopardize their current employment status, or future prospects, merely for having exercised a legal right.”
The A.G.’s memorandum and affidavits indicate that the employee population at issue here is in a similar position to the employee population in Larabee and that releasing their names would be an unwarranted invasion of privacy.
As stated by the A.G.’s affidavits, employees who come forward with grievances against their employers have an even more particularized interest in privacy. Most workplace complaints are filed by low-wage workers, many of whom are immigrants. Jones Aff. at ¶5. These employees often work within particular industries — for example, in landscaping or in construction — and fear being labeled as “litigious” or “troublemakers." Id. at ¶7. As a result of the potential for retaliation or being barred from future employment, many employees do not file complaints with the AGO but are located through the efforts of the FLD inspectors during their investigations. Id. at ¶6. Employees such as these participate in interviews reluctantly and hope that the matter will be either handled discreetly or not shared at all with the employer. Id. at ¶¶8, 9. In order to address such concerns, the A.G.’s Office has employed methods by which it can investigate complaints while maintaining the confidentiality of the workers interviewed. Id. at ¶8. If wage investigations were subject to disclosure to the public at large — including to employers and staffing agencies— it would have a profound chilling effect on the willingness of workers to bring legitimate complaints to the attention of the A.G.’s Office. Id. at ¶ 11.
Where, as here, it is established that disclosure of information requested under the Public Records Law will constitute an invasion of privacy, the burden shifts to the party seeking disclosure to demonstrate that “the public interest in obtaining information substantially outweighs the seriousness of any invasion of privacy.” Globe Newspaper Co., 419 Mass. at 858, quoting Attorney Gen. v. Collector of Lynn, 377 Mass. 151, 156 (1979); accord Torres, 391 Mass. at 10-11 (party seeking disclosure “has the burden of showing that an invasion of privacy is warranted”); Georgiou, 67 Mass.App.Ct. at 433 (where release of records would constitute invasion of privacy, requesting party *257 must show that “the public interest in obtaining information substantially outweighs the seriousness of any invasion of privacy”).
The Supreme Judicial Court has succinctly explained the nature of the “public interest.” “The public has an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner.” Collector of Lynn, 377 Mass. at 158; see also New Bedford Standard-Times Publishing Co. v. Clerk of the Third Dist. Ct. of Bristol, 377 Mass. 404, 417 (1979) (Abrams, J., concurring) (“Greater access to information about the actions of public officers and institutions is increasingly recognized as an essential ingredient of public confidence in government”); Anted, 52 Mass.App.Ct. at 244, 248-49 (recognizing, under public records law, “public interest in disclosing allegations of official misconduct”).
In construing the cognate provisions of the FOIA, the Supreme Court has similarly observed that “the only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would she[d] light on an agency’s performance of its statutory duties” or otherwise let citizens know “what their government is up to.” Department of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 497 (1994), quoting Department of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773 (1989).
AvalonBay’s sole purpose in requesting unredacted copies of interviews with workers is to determine insurance liability in the case at hand. It argues that because the names and addresses are “important to this case,” and it has “no other means to obtain the redacted information,” the Court should order disclosure. See AvalonBay Memo, at 7.
It is true that AvalonBay was not instrumental in any misclassification of Pintado as an independent contractor, and that it therefore does have an equitable interest in seeing that it is covered by the insurance policy if Pintado was actually an employee. But, even without the A.G. records, there is other substantial evidence as to Pintado’s alleged status as an employee.[3] Thus, a determination of the parties’ rights in regard to insurance coverage does not appear to require disclosure of the names of the A.G.’s witnesses.
Nor is there any indication that NCC or AvalonBay are insolvent so that plaintiff will be unable to recover a just verdict even if the defendant companies cannot establish insurance coverage.
The Court finds that, in the circumstances of this case, any public interest is outweighed by the chilling effect on the willingness of workers such as those here to bring legitimate complaints to the attention of the A.G. were their identities to be disclosed.
ORDER
Accordingly, AvalonBay’s Motion to Compel Release of Unredacted Records, is DENIED, and the Attorney General’s Motion to Quash Defendant’s Deportation Subpoenas is, with regard to the identity of the complaining witnesses, ALLOWED.

National has filed a suit in the United States Distnct Court, Distnct of Connecticut, seeking a declaratory judgment that it is not obligated to provide coverage under the policy. United National Insurance Company v. National Carpentry Contractors, Inc., AvalonBay Communities, Inc., Caballero Construction Company, Jorge Pintado, executor of the Estate of Oscar Pintado, U.S. Distnct Court Civil Action No. 3:09CV273 (D.Conn.).

During the investigation, many of the individuals who told the Attorney General that, contrary to National Carpentry’s assertions, they were employees of National Carpentry, were assured by the A.G. that their names would be kept confidential. The investigation is now closed, NCC has finished the project and none of the individuals whose names are sought are still employed by NCC.

See references to deposition testimony of other co-workers of Pintado cited in AvalonBay’s “Statement of Reasons/Memorandum in Support” of its motion.