Kenton-Walker, Janet, J.
INTRODUCTION
This action arises from an alleged breach of a non-disparagement agreement between Timothy P. Ryan (“Ryan”) and employees of the town of Millville (“the town”). Ryan avers that, after being contacted by the Massachusetts State Police in connection with a routine background check, employees and agents of the town made derogatory remarks about him in violation of the non-disparagement agreement. Ryan seeks discovery of certain records in the custody of the Massachusetts State Police (“State Police”) to support claims based on those alleged violations.
Before the court is Ryan’s Motion to Compel Discovery and Attendance at Deposition. For the reasons that follow, that motion will be allowed in part and denied in part.
BACKGROUND
The following facts are taken from the allegations in the Verified Complaint and the uncontested representations of the parties. Ryan served as the Chief of the Millville Police Department from 1987 through 2006. On March 23, 2006, Ryan received notice of a hearing and contemplated disciplinary action from town officials. Subsequently, Ryan and the Millville Board of Selectmen negotiated an employment settlement agreement and release of all claims (“the agreement”).
The agreement provided that Ryan would resign as of December 31, 2006, and that “(t]he parties agree that they will not make any oral or written communication to any person or entity which has the effect of damaging either’s reputation, or otherwise working in any way to either’s detriment.” The parties to the agreement were Ryan and the town, acting through the Board of Selectmen.
In 2007, Ryan applied for the position of director of public safely at Westfield State College (“Westfield”). Part of the application process included a background check conducted by the State Police. Trooper Laura Rollins (“Trooper Rollins”) performed the background check. As part of the background check, Trooper Rollins contacted town officials and personal acquaintances of Ryan. Ryan avers, on information and *231 belief, that the town violated the agreement in that its employees and agents made disparaging statements about him to Trooper Rollins. Ryan was ultimately not selected for the position at Westfield.
Ryan sought in discovery, pursuant to G.L.c. 66, §10, information related to the background check. Westfield produced incomplete records associated with the background check. Specifically, the materials produced by Westfield reference numerous missing “attachments.” Ryan then sent a subpoena to the keeper of records of the State Police, requesting production of “any [and] all reports, memoranda, communications in written form (including but not limited to, those maintained electronically), relating directly or indirectly to Timothy P. Ryan . . . and, including without limitation, any and all reports or evaluations by [State Police] personnel encompassing background checks for potential employment at [Westfield], and any communications with the Town of Millville relating to same.” Ryan also sent a subpoena ad testificandum and duces tecum directing Trooper Rollins to appear and produce “photocopies of any and all documents, including without limitation, reports, evaluation[s] or other documents dealing directly or indirectly with Timothy P. Ryan from March of 2006 to the present.”
The State Police turned over some of the documents that Ryan sought, but asserted that others were irrelevant or protected from disclosure by statutory exemption. Specifically, the State Police maintained that the statements of witnesses interviewed by Trooper Rollins were exempted from disclosure pursuant to the so-called investigative exemption, G.L.c. 4, §7(26)(f). In addition, the State Police stated that their criminal background checks involved information related to other persons that, if disclosed, would constitute an unwarranted invasion of privacy exempted from disclosure under G.L.c. 4, §7(26)(c). Finally, the State Police asserted that certain investigative reports prepared for the Millville Board of Selectmen for use in executive session were exempted under G.L.c. 4, §7(26)(a), which allows for exemption from disclosure where any statute implies that exemption is required. This Motion to Compel followed.
DISCUSSION

1.Standard

“Generally, the public records statute favors disclosure by creating a ‘presumption that the record sought is public.’ ” In re Subpoena Duces Tecum, 445 Mass. 685, 687-88 (2006), citing G.L.c. 66, §10(c). “However, G.L.c. 4, §7, Twenty-sixth, details specific exemptions to the public records statute, but in order for a record to qualify as exempt, the custodian of the record has the burden to prove with specificity that an exemption applies.” Id. and authorities cited (internal quotations omitted). “A case-by-case review is required to determine whether an exemption applies.” Id. and cases cited.

2.Investigative exemption

The investigative exemption applies when “disclosure .. . would probably so prejudice the possibility of effective law enforcement that . . . disclosure would not be in the public interest.” G.L.c. 4, §7(26)(f). “The encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation is a principal objective of the investigatory exemption.” Globe Newspaper Co. v. Police Comm’r of Boston, 419 Mass. 852, 862 (1995).
Here, the witnesses who spoke with Trooper Rollins may well have done so with the expectation that their statements would remain confidential. Disclosing the statements of those witnesses to Ryan may lead them to fear adverse consequences as a result of their candor, and may discourage others from being similarly forthright with investigating officers in the future. Such a result might prejudice the possibility of effective law enforcement in the context of investigatory background checks.
Nevertheless, “the existence of some exempt information in a document will not justify cloture as to all of it.” Id. at 857-58. Therefore, this court will arrange for an inspection of the contested documents, subject to a protective order, to allow the parties to develop arguments concerning which information might trigger the investigative exemption, and what, if any, further protective orders might allow for disclosure without prejudice to the future possibility of effective law enforcement.

3.Invasion of privacy

The privacy exemption set forth at G.L.c. 4, §7(26)(c) is designed to protect “intimate details of a highly personal nature.” Georgiou v. Comm’r of the Dept. of Indus. Accidents, 67 Mass.App.Ct. 428, 433 (2006). Examples of such personal information include “marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcohol consumption, family fights, and reputation.” Id.
If disclosure would amount to an invasion of privacy, as private information is described above, the party seeking disclosure then bears the burden of showing that the public interest in disclosure outweighs the seriousness of the invasion of privacy. See In re Supoena Duces Tecum 445 Mass, at 688. The public has an interest “in knowing if public servants are canying out their duties in an efficient and law-abiding manner.” Attorney Gen. v. Collector of Lynn, 377 Mass. 151, 158 (1979).
The inspection procedure described above will likewise address the objections of the State Police based on its concerns that disclosure would constitute an unwarranted invasion of privacy. Plaintiffs counsel will have the opportunity to review the documents at issue and formulate arguments as to why the public interest in disclosure might override any invasion of privacy.

*232
4.Statutory implication

The State Police do not present any concerted argument in their Opposition to the Motion to Compel as to why any of the information sought by Ryan is exempted under G.L.c. 4, §7(26)(a). Consequently, the court will not address that position at this juncture. See Superior Court Rule 9A(a)(l).
CONCLUSION AND ORDER
For the foregoing reasons, Ryan’s Motion to Compel Discovery and Attendance is ALLOWED as follows:
1. The State Police shall make all documentary evidence sought in the Motion to Compel available to Ryan’s counsel within 21 days of receipt of this order by delivering said documents to the Worcester Superior Court clerk’s office.
2. All such documentary evidence shall be deemed “confidential information” and be impounded.
3. Ryan’s counsel shall review such evidence at the Worcester Superior Court clerk’s office only, and identify all information he deems relevant and appropriate to produce in discovery.
4. Ryan’s counsel is not permitted to copy or remove from the clerk’s office any of the documents produced under this order.
5. Ryan’s counsel shall not disclose or disseminate the information contained in the documents to anyone, including Ryan, without further order of this court.
6. Ryan’s counsel shall not use the information contained in the documents produced for any purpose other than preparation for litigation in this action under the terms of this order or any future orders.
7. Once Ryan’s counsel has identified the documents he deems appropriate for production, he shall provide to counsel for the State Police a list of all documents.
8. Counsel for Ryan and the State Police will have 10 days from the production of that list to prepare briefs, with arguments specific to the documents sought and supported by citation to appropriate authority, as to why they should or should not be produced, and whether Trooper Rollins should or should not be deposed.
9. Such briefs shall be impounded, this court will conduct an in camera review of the documents sought, and shall enter such further orders as may be appropriate.
10. Within sixty days after the final disposition in this action, the Worcester Superior Court clerk’s office will contact counsel for the State Police and arrange a time for the documents to be retrieved by the State Police.