Garsh, J.
DISCOVERY
Defendants seek discovery of materials in the possession of the Boston Police Department (“BPD”) and the Suffolk County District Attorney’s Office (“the District Attorney”), two non-parties. The requested documents were generated in connection with the investigation and prosecution of a criminal action. BPD and the District Attorney have moved for a protective order; the District Attorney also moved to quash the subpoena duces tecum served upon it. Defendants cross-moved to compel discovery of police and prosecutorial records. For the following reasons, BPD’s motion for a protective order is denied; the District Attorney’s motion to quash is denied; its motion for a protective order is allowed in part and denied in part, as is the defendants’ cross-motion to compel.
BACKGROUND
The plaintiff has commenced this action against persons alleged to have ownership interests in or responsibility for control of security at the Club Axis. *275 The complaint alleges that, on January 1, 1995, the plaintiff was sexually assaulted in the rear area of the Club Axis by Thomas Kang (“Kang"). Plaintiff alleges that the defendants failed to exercise reasonable care to keep the premises safe and that the assault upon her was the result of the negligence of the defendants in failing to provide adequate security. More specifically, Doe alleges that the exterior of the building where she was attacked was in the process of being repaired and scaffolding had been erected around the rear exit which obscured the view of the exit and blocked any exterior light from shining on that area. She alleges that there were no external lights illuminating the exit door or the areas around the door and no means or device for a person outside the exit door to get the attention of the personnel inside the club. Doe alleges that there were no security personnel assigned to or patrolling either the rear or the building or the area of the exit door.
Kang was apprehended by security personnel from the Club Axis during the course of the assault and subsequently was arrested by BPD officers. Kang was indicted by the Suffolk County Grand Jury and pled guilty to aggravated rape and assault and battery by means of a dangerous weapon.
During the plea colloquy, on October 25, 1995, the Assistant District Attorney recited the following facts
.[T]his is an offense that happened on New Year’s Eve of this year, going into New Year’s Day.
The victim is a twenty-four-old woman. She came into town — she lives in the suburbs and works as a nanny — to go to a nightclub called Axis, which is in the Fenway section of Boston. She came in with a few friends, and they were at the club for a few hours, when at one point she was approached by the defendant, who tried to initiate some conversation.
She spoke with him briefly and excused herself. She wasn’t particulary interested in talking further with the defendant. She was on her way to the ladies’ room, which was on the side of the dance floor right next to the bar.
It was very crowded that night, and she was trying to make her way through the crowd to the ladies’ room, when she was approached by the defendant, who pushed her out an emergency exit door, which had no way of getting back in the building. They were out in an alley.
He threw her up against the wall, took a brick and began beating her on the head with it, and then he tried to remove some of her clothes. He was able to get her shirt and her bra undone. He was not able to get her pants down, because she was struggling so much. He then took down his pants and raped her orally.
As he was doing this, a bouncer from the club just happened to be taking out the trash and walked out into the alley, walked upon the scene as she was screaming for help, and the defendant’s pants were literally down. He grabbed the defendant off of her and summonsed help.
The police were right out front, they responded immediately, and the defendant was taken into custody.
On January 22, 1996, the plaintiff brought this civil action. In the course of discovery, the defendants served deposition subpoenas duces tecum on the Keepers of the Records for the BPD and the District Attorney seeking access to all records concerning the arrest of Thomas Kang and all documents regarding the criminal proceeding Commonwealth v. Thomas Kang, Suffolk Superior Court No. 95-10020.[2] Defendants have also served a subpoena duces tecum upon BPD Officer Robert Boyle.
The defendants have agreed to be bound by a confidentiality order. The plaintiff, by virtue of the filing of this civil complaint, has made her assault and her subsequent damages an issue on which the defendants are entitled to discovery, and the plaintiff does not object to any of the documents at issue being made available to the defendants by BPD or the District Attorney. The plaintiff does not oppose the defendants’ cross-motion to compel.
DISCUSSION
BPD and the District Attorney argue that a variety of statutes prohibit disclosure of the records sought and that, even if disclosure were not prohibited, the defendants should not be allowed to obtain access to the requested records. BPD also objects to the taking of Boyle’s deposition.
The documents sought contain information which relates directly to the claims in the pending action. Just how crowded the club was on the night of the assault, the placement of the staff inside the club during the relevant times, the nature of the interactions between Kang and the plaintiff inside the club, and what was capable of being heard inside the club from the outside rear all bear directly on what the defendants knew or should have known. The police investigation was conducted promptly after the incident occurred. Interviews and depositions at this date are unlikely to result in recollections as reliable and detailed as that contained in the police files. To the extent the documents contain statements made by the plaintiff herself, such statements constitute admissions for purposes of this action. Statements by others, such as the plaintiffs friends with her that night or other witnesses, may lead to the discovery of admissible evidence, may be used to refresh a witness’s recollection, or may contain prior inconsistent statements.
*276 G.L.c. 41, §97D and G.L.c. 265, §24C
G.L.c. 41, §97D provides that “[a]ll reports of rape and sexual assault. . . and all conversations between police officers and victims of said offenses shall not be public reports and shall be maintained by the police departments in a manner which will assure their confidentiality.” This statute is designed to foster “sensitivity for the rape victim’s plight." Globe Newspaper Co. v. Superior Court, 379 Mass 846, 858 n. 9, vacated on other grounds 449 U.S. 894 (1980), on remand 383 Mass 838 (1981), rev’d on other grounds 457 US 596 (1982). A governmental report that is not “public” is one that is not automatically available to any member of the public who may, for whatever reason, wish a copy and who, thereafter, would be able to disseminate it to a wide audience.
The issue here is not whether these records must be made available for public inspection, but whether they are subject to discovery in civil litigation arising out of the rape to which the records apply. Public inspection clearly is distinguishable from inspection by defendants in a lawsuit containing serious allegations of personal injuries and seeking substantial damages. It does not follow from the fact that the legislature has designated a particular type of report not to be “public” that the legislature also has circumscribed a litigant’s right to access to pertinent police records under the discovery provisons of the Massachusetts Rules of Civil Procedure. Just as c. 41, §97D does not prohibit a defendant in a criminal proceeding from obtaining access to a police report that contains exculpatory and potentially material information, Commonwealth v. Scott, 408 Mass. 811, 817, n.4 (1990), so too it does not prohibit disclosure in a civil action pursuant to a court order enforcing a validly issued subpoena upon a non-party. Cf. Boston Police Superior officers Fed’n v. Boston, 414 Mass. 458 (1993) (public records law does not restrict a commission’s power to subpeona police files); Martinelli v. District Court, 612 P.2d 1083, 1093-94 (Colo. 1980) (en banc) (statute exempting police department internal investigative files from public disclosure under the state’s open records law does not create a privilege removing such documents from the ambit of civil discovery); Tighe v. Honolulu, 520 P.2d 1345, 1348 (Haw. 1974) (“The very broad discovery specifically granted to litigants under the provisons of Rules 33(b) and 26(b)(1), H.R.C.P., cannot be said to be limited by the terms of a charter provision directed toward regulation of the entirely different situation of the general exploration of public records by any citizen during general business hours”). Compare G.L.c. 111, §204 (a) (“theproceedings, reports and records of a medical peer review committee shall be confidential and shall not be subject to subpoena or discovery, or introduced into evidence in any judicial . . . proceeding”). Further, by only producing police reports of rape and sexual assault when compelled by a court to do so, BPD will have maintained its records “in a manner which will assure their confidentiality.”
Section 97D must also be read in conjunction with G.L.c. 265, §24C, which states that “[t]he portion of the records of a court or any police department of the commonwealth . . . which contains the name of the victim in an arrest, investigation, or complaint for rape . . . shall be withheld from public inspection, except with the consent of a justice of such court where the complaint or indictment is or would be prosecuted.” See Commonwealth v. Scott, 408 Mass. at 817 n.4. The prosecution in this case took place in Suffolk Superior Court, the same court where the civil action is being litigated. Nothing in the language of Section 24C limits the exercise of power to permit inspection of the designated records to judges presiding over criminal proceedings. Because a court has the power, pursuant to G.L.c. 265, §24C, to release, for “public inspection,” police department records containing the victim’s name to the general public, it follows that a court may release such records to a parly in a civil litigation initiated by the victim, where the victim’s name is known by the defendants, the victim does not oppose release, and the defendants have agreed to be bound by a confidentiality order.
Investigations of sexual assault, without question, require a police offer to inquire into intensely personal matters. A rape victim, however, can have no reasonable expectation that statements made to an officer of the BPD will not be disclosed to defendants if she, herself, chooses to commence a lawsuit seeking to hold persons responsible for the assault and, indeed, the plaintiff here does not claim that she had or has any such expectation. The concerns for the plight of the rape victim underlying passage of c. 41, §97D and c. 265, §24C are not at stake here since the defendants seek access only for purposes of defending against the victim’s suit. Nothing in these statutes requires or warrants entry of protective order barring disclosure of the documents requested.
G.L.c. 6, §§167 etseq.
The Criminal Offender Record Information Act, G.L.c. 6, §§167 et seq., generally prohibits the disclosure of criminal offender record information (“CORI”), namely records and data “which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, or other judicial proceedings . . .”[3] G.L.c. 6, §167. The statute’s objective is to provide individuals with protection against invasion of their privacy and, in cases of conviction, to promote the public’s interest in rehabilitation. New Bedford Standard Times Publishing Co. v. Clerk of the Third District Court, 377 Mass. 404, 414 (1979). The statute does not preclude this court from ordering disclosure of documents that contain CORI. Regulations promulgated by the Criminal History Systems Board specifically provide that an agency may disseminate “CORI pursuant to a valid subpoena or *277 summons issued by a court or a body or person authorized by law to issue such process.” 803 C.M.R. 2.04(10).[4] Release of records to the defendants in this action will not subject Kang to an unreasonable, substantial, or serious invasion of his privacy. A defendant who commits a rape has no reasonable expectation that records relating to that crime will not be made available to litigants in a civil action arising out of and relating to that rape. Neither the express directive of the Criminal Offender Record Information Act nor the policy underlying that statute makes the protective orders sought by BPD and the District Attorney appropriate.
G.L.c. 4, §7, twenty-sixth
The Public Records Act, G.L.c. 66, §10(a), requires the disclosure, upon request, of any “public record” as that term is defined in G.L.c. 4, §7, twenty-sixth. There is a presumption that any record sought is public. G.L.c. 66, §10(c). Certain categories of documents need not be disclosed because they are specifically exempt from the mandatory disclosure requirement. G.L.c. 4, §7, twenty-sixth (a)-(m). A governmental agency which refuses to comply with a request for disclosure by a member of the public has the burden to prove with specificity the exemption which applies." G.L.c.66, §10(c).
The opposition to the subpoenas served by the defendants is based, in part, on the erroneous assumption that the exemptions constitute legislatively mandated privileges that bar release of records which may fall within one of the enumerated categories.[5] The Public Records Act creates no privileges barring disclosure of records to members of the public. The exemptions mean only that a custodian is not compelled by the statute to produce certain documents, not that their production is prohibited. See, e.g., Westinghouse Broadcasting Co. v. Sergeant-at-Arms of the General Court, 375 Mass. 179, 185 n.9 (1978); Town Crier, Inc. v. Chief of Police, 361 Mass. 682, 691-92 (1972).[6]
A finding that some or all of the requested documents are exempt from mandatoiy public disclosure would not necessarily end the inquiry here because the Public Records Act does not purport to control the scope of discovery that may be allowed to a party in a civil proceeding. Nothing in the Public Records Act or the Massachusetts Rules of Civil Procedure limits discovery from custodians of public records to “public records” as defined by G.L.c. 4, §7, tweniy-sixth, and nothing in that statute or in those rules eliminates this court’s power to order public agencies to produce documents in response to a subpoena even though a member of the public would not be able to compel production of such documents under the Public Records Law. In Boston Police Superior Officers Fed’n v. Boston, 414 Mass. at 458, the City similarly maintained that subpoenaed IAD logs and cards could not be produced because they were exempt from disclosure under G.L.c. 4, §7, twenty-sixth (f). The Court held otherwise, finding that the trial court “had properly upheld the commission’s ruling that the public record law and its exceptions do not restrict the commission’s power to subpoena documents pursuant to G.L.c. 30A, 12, in connection with a complaint before it.” Id. at 465-66. Just as the Labor Relations Commission may properly order the production of material relevant to a case before it, so too may a judge presiding over a civil trial.[7] See also Town Crier, Inc. v. Chief of Police, 361 Mass. 682, 691 (1972) (“All police records . . . whether or not they are public records, are subject to being summoned before a proper tribunal in accordance with established rules of law”); Martinelli v. District Court, 612 P.2d at 1083; Tishe v. Honolulu, 520 P.2d at 1345. Nevertheless, the policy concerns underlying the exemptions do provide guidance in assessing the appropriateness of granting a protective order. See District Attorney for the Norfolk District v. Flatley, 419 Mass. 507, 510-13 (1995) (remanding for determination of whether district attorney met his burden of proof that the documents sought by way of subpoena in a civil action were exempt as investigatory records from public disclosure under the Public Records Act).[8]
The first exemption alleged to apply to the records requested is that contained in G.L.c. 4, §7, twenty-sixth (c) for “medical records.” No medical records appear to be in the possession of the BPD. The only medical records in the possession of the District Attorney appear to be the hospital records of treatment on the day of the incident that were provided after the plaintiff consented in writing to the hospital releasing her medical reports to Suffolk Superior Court.[9] These medical records are exempt from mandatory public disclosure. G.L.c. 4, §7, twenty-sixth (c). There also is no reason to compel the District Attorney to provide copies of the hospital records to the defendants as they have already been produced or could easily be required to be produced by the plaintiff herself. Defendants do not claim that the plaintiff has refused to execute an identical consent to release of her records, and there is no claim that the hospital files have been destroyed.[10]
Also alleged to apply is the exemption for “materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy.” G.L.c. 4, §7, twenty-sixth (c). This exemption requires a balancing between any claimed invasion of privacy and the interest in disclosure. Globe Newspaper Co. v. Police Commissioner, 419 Mass. 852, 858 (1995). In the context of this suit brought by the victim, it would not be an unwarranted invasion of the privacy of the victim, the defendant in the criminal proceeding, or of the witnesses who were interviewed to produce interview statements, laboratory reports, or other miscellaneous records concerning the incident in question. A victim *278 has no reasonable expectation that relevant, non-privileged records relating to her rape will not be disclosed to defendants if she, herself, chooses to commence a lawsuit seeking damages by reason of the assault A person who commits a rape certainly has no reasonable expectation that records relating to that crime will not be made available to litigants in a civil action arising out of and relating to that rape. Finally, “individuals of normal sensibilities,” Attorney General v. Collector of Lynn, 377 Mass. 151, 157 (1979), who speak with the police have no reasonable expectation that their names and what they have said will not be made known to defendants in a civil action arising out of and relating to the crime about which they were interviewed just as their statements may be (and in this case, were) made available to the defendant in the criminal proceeding.[11] Cf. Restatement (Second) of Torts 652D, comment d (“When the subject matter of the publiciiy is of legitimate public concern, there is no invasion of privacy”).
The final exemption claimed to apply to the records in question is that for “investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest.” G.L.c. 4, §7, twenty-sixth (f). As with any of the exemptions, the burden is on the District Attorney’s office and the BPD to prove that the records fall within the investigatory materials exemption. Whether documents fall within the scope of this exemption turns on “whether, because of its possible effect on effective law enforcement, such a disclosure would not be in the public interest.” WBZ-TV4 v. District Attorney for the Suffolk District, 408 Mass. 595, 603 (1990). “There is no blanket exemption provided for records kept by police departments . . . solely because they are involved in investigatory work . . . and . . . the potential prejudicial effect of disclosure on effective law enforcement is to be considered on a case-by-case basis.” Globe Newspaper Co. v. Police Commissioner, 419 Mass. at 859. The policy considerations underlying the exemption for law enforcement investigatory materials include “the avoidance of premature disclosure of the Commonwealth’s case prior to trial, the prevention of the disclosure of confidential investigative techniques, procedures, or sources of information, the encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation, and the creation of initiative that police officers might be completely candid in recording their observations, hypotheses and interim conclusions.” Bougas v. Chief of Police, 371 Mass. 59, 62 (1976).
Neither BPD nor the District Attorney have demonstrated that the prejudicial effects of disclosure on effective enforcement warrants a protective order here. There is no continuing criminal investigation. There is no evidence that the documents to be produced to the defendants would disclose confidential investigative techniques, procedures, or sources of information. There is no suggestion that the files contain any particular name that may be vital either to carrying out other police investigations or to protect a confidential informant. See Reinstein v. Police Commissioner, 378 Mass. 281, 290 (1979) (confidential sources and secret investigative procedures are the sort of material protected by the investigatoiy exemption). The victim’s statements to the police department, the identities and statements to the police of witnesses to the crime, and other documents of a factual nature which do not discuss policy[12] are highly relevant to this litigation, and their disclosure, pursuant to a protective order, does not implicate any of the concerns underlying the exemption.
There is no strong reason to conclude that the disclosure of the victim’s statements in this case to the BPD will invade the plaintiffs privacy or chill future victims from coming forward to report rapes. The victim herself has brought this suit and disclosure of her statements, in this context, does not result in the disclosure of any information she could have hoped to keep secret. Similarly, there is no reason to believe that a future victim will be deterred from reporting an assault because of the possibility that her statement to a police department will be released if she, herself, chooses to commence a civil action. Cf. District Attorney for the Norfolk District v. Flatley, 419 Mass. at 513 n. 9 (court noted that in a civil action against a landlord for negligent provision of security, prosecutor could be asked at a deposition about statements made by the victim in the course of the district attorney’s investigation and prosecution of the crime). Similarly, there has not been a sufficient showing that releasing statements made by witnesses to the BPD and the identities of witnesses would have a chilling effect, deterring witnesses to future crimes from coming forward. While there may be cases in which disclosure of witness statements could compromise police investigations, generalized concerns of secrecy and confidentiality are not sufficiently strong to warrant non-disclosure here. Cf. Globe Newspaper Co., 419 Mass. at 863. The witness statements were provided to Kang in the context of the criminal proceeding; the witnesses could have been called to testify in that proceeding. It is unlikely that the release of statements made to police officers when ordered to do so by a court, after a determination by a judge that the documents sought are relevant to a pending civil action commenced by the victim and when the release is governed by a confidentiality order, would inhibit citizen participation in future criminal investigations. See Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973) (permitting discovery of witness statements because “we do not believe that rare instances of disclosure pursuant to a court order made after application of a balancing test... would deter citizens from revealing information to the police”). In contrast to the *279 weak showing of the possibility of prejudice to future law enforcement, there has been a significant showing that these materials are highly relevant and important to the case. Release of the other documents that are being ordered to be produced does not make it likely that police officers will not be “completely candid in recording their observations, hypotheses and interim conclusions.” Bougas v. Chief of Police, 371 Mass. at 62. See also Wood v. Breier, 54 F.R.D. 7, 9-10 (E.D. Wise. 1972) (protective order under Fed.R.Civ.P. 26(c) denied with respect to file of internal police investigation into incident which was basis of the lawsuit); Giles v. Gill, 4 Mass. L. Rptr. No. 31, 696, 697 (October 15, 1996) (court denied motion for protective order and ordered BPD to make investigatory file available in civil action arising out of assault where the police department had not satisfied its burden of proof that, in the particular circumstances of that case, the disclosure of the investigatory materials would probably be so prejudicial that its disclosure would not be in the public interest).
In sum, BPD and the District Attorney have not offered an adequate justification for nondisclosure which relates, in a specific manner, to the records sought by the defendants and which establishes that disclosure of these records to the defendants could well have an adverse effect on effective law enforcement. To subject such records to disclosure in this civil action pursuant to a confidentiality stipulation would not “probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest. . .” G.L.c. 4, §7, twenty-sixth (f).
Deliberative Process Privilege
The District Attorney argues that the defendants should not have access to its files because the documents in those files are inextricably connected with the deliberative processes of the prosecutor and thus protected from public inquiiy. “However, in Massachusetts, neither the courts nor the Legislature has adopted a ‘deliberative process’ privilege as the district attorney now suggests.” District Attorney for the Norfolk District v. Flatley, 419 Mass. at 510. Instead there is a common law privilege encompassing “communications made to a prosecutor for the purpose of securing law enforcement,” qualified by the public records statute that creates a presumption of access to all public records unless the custodian proves with specificity that one of the exemptions to automatic disclosure specifically applies. Id. at 510-11. At oral argument, the defendants represented that they were not seeking to obtain documents concerning decisions regarding whether or not to prosecute a case, the manner of prosecuting cases, or the district attorney’s mental impressions, including notes made by the District Attorney or memoranda of law. The document inventory submitted by the District Attorney lists no documents containing communications made to a district attorney for the purpose of securing law enforcement. As stated above, the District Attorney has not demonstrated that production of the documents which this court is requiring to be produced[13] would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest. See District Attorney for the Norfolk District v. Flatley, 419 Mass. at 511-13; G.L.c. 4, §7, twenty-sixth (f).
Grand Juiy Transcripts
Included among the District Attorney’s files are grand jury minutes. Except for the three pages of minutes attached to the defendant’s motion to suppress oral statement, which was filed with the court, the grand juiy minutes need not now be produced to the defendants. The District Attorney is bound by Mass.R.Crim.P. 5(d), which provides that “a person performing an official function in relation to the grand juiy may not disclose matters occurring before the grand jury except. . . when specifically directed to do so by the court.”[14]
“The requirement that grand jury proceedings remain secret is deeply rooted in the common law of the Commonwealth.” WBZ-TV4, 408 Mass. at 599. There has been no showing that the material presented to the grand jury has become so widely known as to lose its protected status. Cf. Globe Newspaper Co., 419 Mass. at 866.
In order to obtain a transcript protected by Mass.R.Crim.P. 5(d) for use in civil litigation, a private party must overcome the presumption of secrecy by demonstrating that the need for disclosure outweighs the need for continued secrecy, that disclosure is needed to avoid a possible injustice in the civil action, and that only the material so needed has been requested. Cf. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222-23 (1979) (setting forth standard for discovery by a party in a civil litigation of grand jury materials protected by the Fed.R.Crim.P. 6(e)).[15] The showing must be made with particularity. Cf. United States v. Proctor & Gamble Co., 356 U.S. 677, 681-82 (1958) (no compelling necessity shown for the wholesale discovery and production of a grand jury transcript).
Defendants have not shown that their need for grand juiy materials at this stage outweighs the presumption of secrecy. They argue that they are entitled to the grand juiy transcripts because witnesses who may testify at trial may have made statements which may be inconsistent with their testimony at trial or at deposition. That is insufficient. Defendants “must do more than argue that the transcripts contain useful and relevant testimony.” In re Screws Antitrust Litigation, 91 F.R.D. 47, 49 (D.Mass. 1981). At this point the defendants have not received the names of persons who spoke to the police and have not seen their statements to the police. Presumably each of these witnesses may be deposed. Saving of time and expense *280 does not justify a breach of grand juiy secrecy. United States v. Sells Engineering, Inc., 463 U.S. 418, 431 (1983) (if, in particular case, ordinary discoveiy or other routine avenues of investigation are insufficient, disclosure of grand jury transcript might be warranted). Persons who testified before the grand jury may be willing to disclose the transcripts of their testimony to the defendants. Furthermore, it is too early to identify who will testify at the trial, if the witnesses who testified at the grand juiy will be hostile witnesses, whether they are available to testify, or whether they will need their recollections refreshed. “The burden on the party favoring release of the transcripts is an ever changing one.” In re Screws Antitrust Litigation, 91 F.R.D. at 48. The disclosure of a grand jury transcript to impeach a witness, to refresh his recollection, to test his credibility, and the like can be limited to those portions of a particular witness’ testimony that bear upon some aspect of his direct testimony at trial. Douglas Oil Co., 441 U.S. at 222 n. 12.
In sum, the defendants have not demonstrated a compelling and particularized need for lifting the veil of grand jury secrecy. Merely expediting civil discovery falls far short of proof that, without the transcripts, the ends of justice in this case would be ill-served. The pubic interest in releasing the transcripts to the defendants is not stronger than the public interest in maintaining grand juiy secrecy.
The defendant’s motion to suppress, attached to which are three pages of grand jury testimony, stands in a different light. Rule 5(d) does not preclude access to grand jury materials that have actually been used in a criminal proceeding. Grand jury minutes, for example, are routinely used in criminal proceedings to impeach witnesses at trial and yet the courtroom is not closed simply because portions of grand juiy transcripts are being read aloud. See United Sates v. Gurney, 558 F.2d 1202, 1205 n.2, 1210 (5th Cir. 1977) (allowing the press to obtain transcripts of grand jury testimony that had been read to the juiy at trial, while keeping the unpublished portions of the grand jury testimony under the Fed.R.Crim.P. 6(e) cloak of secrecy), cert. denied, 453 U.S. 968 (1978). Just as the public is presumptively entitled to access to criminal judicial proceedings, including pre-trial suppression hearings,[16] so too it is presumptively entitled to access to documents filed in open court in connection with those proceedings, even after the proceedings have ended. Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 502 (1st Cir. 1989). See also In re New York Times Co., 828 F.2d 110, 114 (2d Cir. 1987) (right of access to pre-trial suppression hearing documents), cert. denied, 485 U.S. 977 (1988). The fact that the motion to suppress was not acted upon after it was filed does not affect the public’s right of access. Cf. United States v. Patriarca, No. 89-289, slip op. at 13 (D.Mass. June 26, 1990) (public has right of access to grand jury materials attached to affidavit filed in connection with pre-trial detention hearing even though magistrate did not rely upon such materials because “[a]pplying the Douglas Oil rationale . . ., the preservation of the secrecy of grand juiy proceedings does not outweigh the public’s First Amendment right of access”).
The District Attorney has not demonstrated that impoundment of the motion to suppress is essential to preserve higher values and is narrowly tailored to serve that interest. Id. at 14. See also Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 13-14 (1986); In re New York Times, 828 F.2d at 116. Because the denial of public access to the motion to suppress cannot be justified, it follows that there is no good cause for a protective order precluding the defendants from access to this particular record.
ORDER
In light of the foregoing, it is hereby ORDERED that:
1. the motion for a protective order filed by the Boston Police Department with respect to the documents and the deposition of Officer Robert Boyle is DENIED;
2. the motion to quash the subpoena duces tecum filed by the Suffolk County District Attorney’s Office is DENIED;
3. the motion for a protective order filed by the Suffolk County District Attorney’s Office is ALLOWED as to the documents numbered 1-3, 5, 12-14, 16-21, 23-27, 30-38, 40-45, 47-53 on the Document Inventory filed with this court and DENIED as to the documents numbered 4, 6 (A and B), 7, 8, 9 (A and B), 10, 11, 15, 22, 28, 29, 39, and 46 on said Document Inventory;
4. the defendants’ motionfyo compel is ALLOWED as to all the documents on the list submitted by the Boston Police Department, as to the deposition of Officer Boyle, and as to the documents numbered 4, 6 (A and B), 7, 8, 9 (A and B), 10, 11, 15, 22, 28, 29, 39, and 46 on the Document Inventory filed by the Suffolk County District Attorney’s Office and is otherwise DENIED; and
5. the name of the plaintiff shall be deleted from all documents prior to their production; counsel for the parties shall not disclose the contents of the documents received from BPD or the Suffolk County District Attorney’s Office to anyone but their clients except with the consent of the entity providing said records or by leave of court, and are not to use the documents for any purpose other than this action.

The documents sought in the subpoena duces tecum served on the District Attorney were “all documents" in the district attorney’s possession regarding the criminal case Commonwealth v. Thomas Kang, Suffolk Superior Court No. 95-10020, “including but not limited to police investigatory reports, medical reports, lab reports, grand jury minutes, *281 which relate or pertain to the arrest, indictment and conviction of . . . Thomas Kang.” The documents sought from the BPD included “incident reports, supplemental reports, followup reports, medical reports and detective and investigator reports."

The Criminal History Systems Board may, however, authorize the dissemination of records and data if it determines that the public interest in such dissemination outweighs the interest in security and privacy. G.L.c.6, §172.

To the extent that the documents requested include pleadings filed in the related criminal proceeding, e.g., defendant’s motion to suppress oral statements attaching as exhibits three pages from the grand jury minutes, CORI may not constitutionally preclude the District Attorney from releasing those records. See Globe Newspaper Co. v. Fenton, 819 F.Supp. 89, 100-01 (D. Mass. 1993).

See, e.g., District Attorney’s Memorandum of Law in Support of a Motion for a Protective Order and Motion to Quash at 10 (“To the extent that the Suffolk County District Attorney’s office is in possession of medical records of Jane Doe, those records are privileged form disclosure. G.L.c. 4, §7, cl. Twenty-six (c). This office is not allowed, therefore, to release any medical records of Jane Doe in its possession.”).

See also Dunn v. Board of Assessors, 361 Mass. 692, 695 n. 6 (1972). Cf. Globe Newspaper Co. v. Boston Retirement Board, 388 Mass. 427, 442 & n. 24 (1983) (vacating trial court’s injunction against the disclosure of information exempted by the Public Records Act). Similarly, decisions under the federal Freedom of Information Act, upon which the Massachusetts state is patterned, id. at 433 n. 11, are unequivocal in their holdings that exemptions create no prohibitions against the release of information. See Chrysler Corp. v. Brown, 441 U.S. 281, 294 (1979).

The documents to be produced by BPD and the District Attorney shall be subject to a confidentiality order similar to that which governed the subpoenaed production of IAD reports upheld by the Supreme Judicial Court in Boston Police Superior Officers Fed'n v. Boston, 414 Mass. at 461 n. 5.

More narrowly, District Attorney for the Norfolk District v. Flatley, 419 Mass. 507, 510-11 (1995) holds that when faced with a party’s request for access to written statements made to a District Attoreny in order to secure the enforcement of law, which would have been privileged under the common law, such documents may be released if they are not exempted from disclosure under G.L.c. 4, §7, twenty-sixth (f). None of the documents at issue are alleged to contain statements made to a prosecutor for the purpose of securing law enforcement.

Following argument on the motions, at the request of the court, the BPD and the District Attorney each submitted a document inventory.

Defendants have stated that they are not now seeking access to any records related to or produced pursuant to Commonwealth v. Bishop, 416 Mass. 169 (1993), and there appear to be no Bishop records in the possession of the District Attorney produced by any provider.

There is no claim that any of the witnesses were confidential informants.

Included in this category would be the Sexual Assault Unit Case Updates, which contain information about the disposition of the criminal case and requests for the destruction of evidence, and reports from the BPD Crime Lab concerning examination of physical evidence. At the hearing, the defendants indicated that they were not seeking documents which might reflect the District Attorney’s own notes or memoranda about the criminal action.

In addition to the category of documents that the defendants have agreed not to seek, certain other documents in the District Attorney’s files will not be required to be produced because they do not appear to be relevant to the subject matter involved in the pending action within the meaning of Mass.R.Civ.P. 26(b)(1), do not fall within the type of documents the defendants state they are seeking or the rationale they have articulated for access to such documents, or it would be unnecessarily intrusive to require their production from the District Attorney.

According to the Document Inventory submitted by the District Attorney, each witness at the grand jury hearing received a copy of his or her own grand jury testimony. Nothing in Mass.R.Crim.P. 5(d) precludes a witness from sharing a copy of that transcript with the defendants. See Butterworth v. Smith, 494 U.S. 624 (1990) (holding unconstitutional a state statue which prohibited a grand jury witness from disclosing his own testimony even after the grand jury term had expired).

Fed.R.Crim.P. 6(e)(3)(c)(l) provides: “Disclosure otherwise prohibited by this rule of matters occurring before the grand juiy may also be made when so directed by a court preliminary to or in connection with a judicial proceeding.” There is no significant difference between the federal rule permitting disclosure when directed by a court and the Massachusetts rule prohibiting disclosure except when directed by a court. Numerous state courts, interpreting their own criminal rules of procedure, follow standards substantially similar to those articulated in Douglas Oil Co. E.g., Rosado v. Galloza, 497 N.Y.S.2d 977 (1985); People v. Tynan, 701 P.2d 80 (Colo.App. 1984); State v. Doliner, 475 A.2d 552 (N.J. 1984); Petition for Disclosure of Evidence, 407 N.E.2d 513 (Ohio 1980).

See generally Press Enterprise Co v. Superior Court, 478 U.S. 1 (1986) (finding a constitutional right of access to criminal preliminary hearings); United States v. White, 855 F.Supp. 13 (D.Mass. 1994) (presumptive right of access to suppression hearings).